UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JASMINEANN VEGA, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:10-CV-1870 (JCH) |
| | : | |
| v. | : | |
| | : | |
| SACRED HEART UNIVERSITY, INC. | : | JULY 20, 2011 |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION TO DISMISS (Doc. No. 14)**

**I.   INTRODUCTION**

Plaintiff Jasmineann Vega ("Vega") brings this action against defendant Sacred Heart University, Inc. ("SHU") for damages resulting from SHU's failure to respond to an act of hazing, both on and off campus, and the school's failure to prevent subsequent harassment of Vega. Vega asserts two claims under Connecticut law: (1) she alleges that SHU negligently inflicted emotional distress on her, and (2) she alleges that SHU violated the Connecticut Unfair Trade Practices Act ("CUTPA"), by failing to abide by an alleged promise contained within SHU's student handbook.

SHU filed the instant Motion to Dismiss (Doc. No. 14), pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Vega has failed to state plausible claims for relief. For the reasons explained more fully below, the court grants SHU's Motion to Dismiss, in part, with respect to Vega's CUTPA claim. However, the court denies SHU's Motion with respect to Vega's negligent infliction of emotional distress claim.

**II.   FACTUAL BACKGROUND**

Vega resides in the Bronx, New York. See Compl. ¶ 3 (Doc. No. 1). In 2010,

1

Vega graduated from Sacred Heart University ("Sacred Heart"), which is owned and operated by the defendant in this case. Id. at ¶¶ 3-4. Prior to November 2009, Vega resided on Sacred Heart's campus. See id. at ¶ 11.

On the night of October 2, 2009, Vega was kidnapped by members of a Sacred Heart sorority, Delta Phi Kappa, as part of a hazing process. Id. at ¶ 6. She was taken to an unknown location off campus, where she was physically and mentally abused over a period of several hours. Id. Vega suffered injuries to her shoulders, ankle, and spine, as well as severe emotional distress, as a result of these events. Id. at ¶ 7.

Immediately after the kidnapping occurred, Vega reported what had happened to SHU. Id. at ¶ 8. SHU, however, took no action to protect Vega from future harassment by members of the sorority. Id. at ¶ 9. On October 12, October 15, and November 16, Vega was further harassed and intimidated by the perpetrators of the initial attack and their friends. Id. at ¶ 10. Reports to SHU continually failed to elicit a response from the school. Id. Eventually, Vega was forced to move off campus to complete her studies from home. Id. at ¶ 11.

## III. STANDARD OF REVIEW

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court takes the allegations of the Complaint as true and construes them in a manner favorable to the plaintiff. See, e.g., Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002). The court must draw all reasonable inferences in the plaintiff's favor. See, e.g., Yung v. Lee, 432 F.3d 142, 146 (2d Cir. 2005).

A motion to dismiss for failure to state a claim tests only the adequacy of the

Complaint. See United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004). Bald assertions, and mere conclusions of law, do not suffice to meet the plaintiff's pleading obligations. See Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006). Instead, a plaintiff is obliged to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), rev'd on other grounds sub. nom. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129 S.Ct. at 1949.

## IV. DISCUSSION

### A. Negligent Infliction of Emotional Distress[1]

Vega's Complaint includes allegation sufficient to support a plausible claim of negligent infliction of emotional distress. In Connecticut, such a claim is adequately pled if plaintiff alleges that: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003). SHU argues that Vega's claim should fail

---

[1] The court will not address SHU's arguments with respect to educational malpractice and intentional infliction of emotional distress. See Def.'s Mem. 6-12, 22-24. Vega acknowledges in her Opposition that Connecticut does not recognize an educational malpractice claim. Pl.'s Opp. 3; see Gupta v. New Britain Gen. Hosp., 239 Conn. 574, 590-594 (1996). Further, Vega does not argue that her Complaint supports an intentional infliction claim, nor does she appear to have alleged sufficiently outrageous conduct to support one. See Hall v. Bergman, 296 Conn. 169, 183 n.9 (2010) (requiring "extreme and outrageous" conduct to sustain an intentional infliction claim).

for a number of reasons, including: (1) that Vega has not alleged the existence of a duty which SHU breached, (2) that Vega has not alleged that SHU's conduct caused Vega severe distress, and (3) that the court should not permit Vega's claims on the ground of public policy. For the following reasons, the court rejects these arguments.

          1.      SHU's Duty to Protect Vega from Harassment and Intimidation

SHU's first argument is that it did not have a duty to protect Vega from harassment or intimidation by other students. See Def.'s Mem. 13-15. According to Vega's Complaint, despite reporting both the initial instance of hazing and repeatedly reporting the follow-up harassment and intimidation by the perpetrators and their friends, the school "refused to take appropriate and necessary steps to protect the plaintiff." Compl. ¶ 10. It is SHU's contention that it did not have a legally recognized duty to take such steps.

SHU is correct that an essential element of a negligent infliction claim is the existence of a duty, the failure of which gave rise to the claim. See Zides v. Quinnipiac Univ., No. CV20470131S, 2006 WL 463182, at *5 (Conn. Super. Feb. 7, 2006) ("[I]f the plaintiff cannot prove negligence he or she cannot recover for negligent infliction of emotional distress." (citing Roach v. Ivari Int'l Ctrs., Inc., 77 Conn. App. 93, 99-103 (2003)); see also Gomes v. Commercial Union Ins. Co., 258 Conn. 603, 614 (2001) ("The existence of a duty of care is a prerequisite to a finding of negligence."). According to SHU, a university has no affirmative duty to protect its students from one another. The case law, however, does not entirely support this argument.

There is a general rule against imposing an affirmative duty to aid or protect

4

another.  See Murdock v. Croughwell, 268 Conn. 559, 566 (2004).  Courts have also been reluctant to find a duty to protect derived solely from the relationship between the university and the student.  See, e.g., Booker v. Lehigh Univ., 800 F. Supp. 234, 238 (E.D. Pa. 1992) ("'[T]he modern American college is not an insurer of the safety of its students.'" (quoting Bradshaw v. Rawlings, 612 F.3d 135, 138 (3d Cir. 1979))). Nonetheless, a number of courts have found that a university may assume a duty to protect its students by way of its affirmative conduct.  See, e.g., McClure v. Fairfield Univ., No. CV000159028, 2003 WL 21524786, at *7-8 (Conn. Super. June 19, 2003); Furek v. Univ. of Del., 594 A.2d 506, 520 (Del. 1991); Mullins v. Pine Manor Coll., 389 Mass. 47, 52-54 (1983); Davidson v. Univ. of N.C. at Chapel Hill, 142 N.C. App. 544, 558-59 (2001).  In Furek v. University of Delaware, for example, the Delaware Supreme Court, relying on the Restatement (Second) of Torts § 323, found that the fact that the school "was knowledgeable of the dangers of hazing" and expressed a strong "policy of discipline for hazing infractions" resulted in "an assumed duty" to protect its students from such activity.  Id.

Another source of this affirmative duty can be found in the premises liability doctrine.  See, e.g., Furek, 594 A.2d at 520-22; Estate of Butler ex rel. Butler v. Maharishi Univ. of Mgmt., 589 F. Supp. 2d 1150, 1168 (S.D. Iowa 2008) ("'A university owes student tenants the same duty to exercise due care for their protection as a private landowner owes its tenants.'" (quoting Nero v. Kan. State Univ., 253 Kan. 567, 584 (1993))).  "'Typically, [f]or [a] plaintiff to recover for the breach of a duty owed to [him] as [a business] invitee, it [is] incumbent upon [him] to allege and prove that the

5

defendant either had actual notice of the presence of the specific unsafe condition which caused [his injury] or constructive notice of it.'" Kelly v. Stop & Shop, Inc., 281 Conn. 768, 794 (2007) (quoting Baptiste v. Better Val-U Supermarket, Inc., 262 Conn. 135, 140 (2002) (alterations in original)). Such a duty will also be extended to encompass a duty to protect invitees from foreseeable third-party attacks. See, e.g., Monk v. Temple George Assocs., LLC, 273 Conn. 108, 115-16 (2005).

Vega has alleged facts sufficient to give rise to a plausible claim that SHU owed her a duty of care under either of the two theories discussed above. Vega has alleged that SHU undertook to protect her from foreseeable attacks by third parties, by way of its affirmative avowals of its anti-harassment and anti-hazing policies, and the steps the university took to enforce these policies. Vega has also sufficiently alleged that she was an invitee and a foreseeable victim of attacks by third parties on SHU's property. For these reasons, the court denies SHU's Motion on this ground.

      2.      Causation and Severity

SHU next argues that Vega's Complaint does not allege that SHU's conduct caused Vega's distress and that Vega has not alleged that her distress was sufficiently severe. See Def.'s Mem. 16. The court rejects these arguments.

Vega's claim is that SHU failed to protect her from harassment and intimidation on campus by the very same individuals that kidnapped, assaulted, and humiliated her only weeks before. See Compl. ¶ 10. Vega alleges that this harassment was so severe that she was forced to move off campus to escape her assailants. Id. at ¶ 11. These allegations easily support a claim that SHU's failure to protect Vega "created an

6

unreasonable risk of causing [her] emotional distress" and that Vega's distress "was severe enough that it might result in illness or bodily harm."  Carrol, 262 Conn. at 444.

        3.        Public Policy

SHU's final argument is that the court should limit the liability of universities in negligent infliction cases to instances of student expulsion.  See Def.'s Mem. 17-18.  The school argues that the educational context can be analogized to the employment context, in which the Supreme Court of Connecticut has limited the availability of negligent infliction claims to termination cases.  See Perodeau v. City of Hartford, 259 Conn. 729, 762-63 (2002).

SHU's arguments in this vein are perfunctory and include no supporting cases.  In fact, the only Connecticut court that appears to have mentioned this argument avoided the issue.  See Faraclas v. Botwick, No. CV20459655S, 2005 WL 527961, at *5 (Conn. Super. Jan. 25, 2005).  A brief consideration of Perodeau's factors leads this court to conclude that an extension of the Perodeau's limitation is not warranted in this case.  See Perodeau, 259 Conn. at 756-57 ((("[T]his court recognize[s] four factors to be considered in determining the extent of a legal duty as a matter of policy: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging continued vigorous participation in the activity, while protecting the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions.").

Although students doubtless expect to experience emotional distress during their college years, they do not expect such distress to come at the hands of the university

7

itself.  Additionally, the fears of chilling competitiveness in the workforce that drove the Perodeau decision find no easy analogy in the educational context.  See id. at 758.  Here, while Vega is basing her claim on the actions (or lack of action) of SHU's employees, she is not in competition with those agents or SHU.

SHU's specter of "a wave of spurious claims" appears unsupportable.  See Def.'s Mem. 17.  Negligent infliction claims against educational institutions are not new, see, e.g., Zides., 2006 WL 463182, at *4-5, and SHU presents no evidence that schools are inundated with such claims.  The Supreme Court of Connecticut has already limited suits against universities on educational malpractice grounds, so SHU's fear of students suing over poor grades is misplaced.  See Gupta v. New Britain Gen. Hosp., 239 Conn. 574, 590 (1996) (finding that the judiciary is "ill equipped" to review a claim, "[w]here the essence of the complaint is that [an educational institution] breached its agreement by failing to provide an effective education'" (quoting Ross v. Creighton Univ., 957 F.2d 410, 416 (7th Cir. 1992) (second alteration in original)).  Further, negligent infliction claims are heavily circumscribed by the limited nature of the cause of action.  See, e.g., Calderon v. Saxton, No. 3:03-cv-1566, 2007 WL 2752183, at *5 (D. Conn. Sept. 21, 2001) (dismissing negligent infliction claim based on meeting between plaintiff and dean, where dean informed plaintiff of school's policy, because plaintiff failed to allege that "it was unreasonable of Saxton to inform her of [the] policy"); Ruggiero v. Yale Univ., No. 3:06-cv-1165, 2007 WL 2684631, at *3 (D. Conn. Sept. 10, 2007) (dismissing negligent infliction claim based on the school's failure to admit plaintiff into a graduate program, because she "present[ed] no allegation that the manner in which defendant

carried out its rejection of plaintiff was unreasonable or even unusual"); Faraclas, 2005 WL 572961, at *5 (dismissing plaintiff's negligent infliction claim for failure to allege conduct "sufficiently wrongful such that it involved an unreasonable risk of causing emotional distress," and noting that, "[i]n the educational context, administrators make decisions that may distress students, but more is required to make such distress actionable in tort").

Finally, SHU has failed to cite a single case in this or any other jurisdiction limiting negligent infliction cases against universities to cases of expulsion, nor has the court located one. For these reasons, the court concludes that the differences between the employment and educational contexts are sufficient to distinguish this case from that of Perodeau, and the court declines to extend the Perodeau policy limitation on negligent infliction claims to this case.

B. Connecticut Unfair Trade Practices Act

In contrast with her negligent infliction of emotional distress claim, Vega's claim under CUTPA is insufficiently pled. CUTPA generally prohibits the "engag[ment] in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). "[I]n order to allege a CUTPA violation properly, the plaintiff must allege, inter alia, that the acts complained of were performed in a 'trade' or 'business.'" Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 669 (1992). Additionally, "a CUTPA violation may not be alleged for activities that are incidental to an entity's primary trade or commerce." McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc., 93 Conn. App. 486, 523 (2006)

(emphasis added).

Vega has not alleged sufficient facts to suggest that, by failing to provide for her safety, SHU was engaging in "trade or commerce" or that SHU's "primary trade or commerce" included the provision of safety and security to its students. She does not allege, for example, that SHU charged fees in exchange for such security or that the university required its students to live on campus as part of their course of study. See, e.g., Osberg v. Yale Univ., No. CV085021879S, 2009 WL 659072, at *6 (Conn. Super. Feb. 11, 2009) (finding conduct with respect to plaintiff's residence was not "incidental" where the university "required the plaintiff to rent both a residence and studio from the defendant as part of her matriculation to [her] program"); Day v. Yale Univ. Sch. of Drama, No. CV 970400876S, 2000 WL 295612, at *4 (finding plaintiff sufficiently alleged trade or commerce by alleging that school failed to inform him his likelihood of dismissal early enough for him to decide whether to continue his course of study and accrue further expenses) . Absent such allegations, Vega's Complaint fails to state a plausible CUTPA claim.

Additionally, to the extent Vega has alleged that SHU has failed to satisfy the promises made within its student handbook, her CUTPA claim appears to be little more than a breach of contract claim. A simple breach of contract cannot sustain a CUTPA claim, absent some allegation as to "'how or in what respect the defendant's activities are either immoral, unethical, unscrupulous or offensive to public policy.'" Gabriele v. Sanzaro, No. 3:10-CV-38, 2010 WL 2860730 (D. Conn. July 19, 2010) (quoting Blvd. Assocs. v. Sovereign Hotels, Inc., 72 F.3d 1029, 1039 (2d Cir. 1995)). Vega has failed

10

to include any such allegation in more than a conclusory fashion, and her CUTPA claim is, therefore, insufficiently pled.

## V. CONCLUSION

For the foregoing reasons, the court grants defendant's Motion to Dismiss (Doc. No. 14) in part with respect to Vega's CUTPA claim, and denies it in part with respect to her negligent infliction of emotional distress claim. The court previously granted defendant's motion to stay discovery in anticipation of this Ruling. See Doc. No. 26. In light of the court's instant Ruling, this stay is lifted. Discovery is currently scheduled to end on August 1, 2011. If parties need additional time, they should confer and move to modify the current schedule.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 20th day of July, 2011.

        /s/ Janet C. Hall
    Janet C. Hall
    United States District Judge