UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JASMINEANN VEGA, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:10-CV-1870 (JCH) |
| | : | |
| v. | : | |
| | : | |
| SACRED HEART UNIVERSITY, INC., | : | APRIL 10, 2012 |
| Defendant. | : | |

**RULING RE: MOTION FOR SUMMARY JUDGMENT [Doc. No. 37]**

**I.     INTRODUCTION**

Plaintiff, Jasmineann Vega ("Vega"), brings this action against defendant, Sacred Heart University, Inc. ("SHU"), for damages resulting from SHU's failure to respond to an act of hazing, both on and off campus, and the school's failure to prevent subsequent harassment of Vega. Vega alleges that SHU negligently inflicted emotional distress by failing to abide by an alleged promise contained within SHU's student handbook.

SHU has filed a Motion for Summary Judgment, arguing that Vega's claim is one of educational malpractice, a cause of action that is not recognized in Connecticut courts. Additionally, SHU argues that Vega's negligent infliction of emotional distress claim fails as a matter of law. SHU states that its response to Vega's report of hazing was reasonable, that it had no notice that there were any unsafe conditions on its campus, and that it was not foreseeable that Vega would suffer severe emotional distress as a result of SHU's actions or inactions following the report of the hazing incident.

## II.     FACTUAL BACKGROUND[1]

In the fall of 2009, Vega participated in "Go Greek," a week-long process during which she met the sisters of Delta Phi Kappa (the "Sorority"). On October 2, 2009, a Sorority sister picked up Vega and brought her to a house in Bridgeport where she was told to go to the basement of the house with the other Sorority pledges. There, Vega, as well as the other Sorority pledges, were required to maintain physical poses and perform exercises. Vega reported the hazing incident to SHU's Public Safety Department on October 5, 2009. On October 7, 2009, SHU's Dean of Students, Larry Wielk, informed the Sorority sisters that they were suspended from campus, which included all academic and non-academic activities, effective immediately. In addition, the Sorority sisters were informed that they were not to have any contact with any of the Sorority pledges, including Vega. The no contact order was never removed. Effective October 14, 2009, the sisters' suspension was reduced to a "non-academic suspension," which allowed them to return to classes. On October 26, 2009, after the school conducted its hearings, eleven members of the Sorority received additional discipline. The Bridgeport Police Department also investigated the matter, but no arrests were made.

Vega claims that, on or around October 12, 2009, individuals posted comments on the Facebook page of Ms. Segalla, a Sorority sister, regarding SHU's investigation into the hazing incident. Vega also received phone calls to her cell phone from two non-students that she perceived as being threatening.

---

[1] In connection with a motion for summary judgment, the court relies on the undisputed facts in the parties' Local Rule 56(a) Statements. If a fact is disputed, the court views the evidence in the light most favorable to the plaintiff.

Vega alleges that on October 14, 2009, while walking to the Public Safety Office to meet her mother, three Sorority sisters followed her. One of the Sorority sisters tugged on her hood and said, "We got her." Vega claims that the Sorority sisters attempted to "jump her" outside the Public Safety Office, but that when they noticed Vega's mother, the Sorority sisters ran away. In contrast, the Sorority sisters state that a news crew had been at the Sorority sisters' off-campus home and that they were on their way to the Public Safety Office to report the issue when they saw Vega and her mother. As a result, they went to speak with Dean Wielk rather than report the issue to the Public Safety Office. The Sorority sisters claim that they did not follow or harass Vega. Dean Wielk was unable to conclude that the Sorority sisters intentionally harassed Vega or violated the no contact order while on campus.

On November 16, 2009, Vega visited her dormitory room with her mother, father, sister, and uncle to pick up books and drop off a pair of shoes and a check for the cable bill. Without Vega's knowledge, Vega's roommates invited Ms. Segalla, a Sorority sister, to their room. Upon entering her room, Vega noticed Ms. Segalla and immediately had an anxiety attack.

### III.   STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination,

the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Fed. R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.' " Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). In determining whether a triable issue of fact exists, the court may only rely on admissible evidence.  See ABB Indus. Sys., Inc. v. Prime Tech., Inc., 120 F.3d 351, 357 (2d Cir. 1997).  Where the opposing party relies on affidavits or declarations, the affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on matters stated." Fed. R. Civ. P. 56(c)(4).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).


**IV.      DISCUSSION**

Vega filed suit against SHU for negligent infliction of emotional distress.[2] Plaintiff's Brief in Opposition to Motion for Summary Judgment (Doc No. 42) (hereinafter "Pl.'s Brief in Opp.") at 3.  After Vega was subjected to a hazing incident by the Sorority sisters, she reported it through formal complaints to SHU.  Id. at 1.  Vega alleges that SHU knew that Vega was in fear of retaliation for reporting the hazing incident, as evidenced by SHU issuing a no contact order.  Id. at 3.  Despite issuing this order, Vega alleges that SHU did not enforce the no contact order, thus failing to provide her security.  Id.  As a result, Vega suffered harassment while walking on campus.[3]  Id.

SHU has filed a Motion for Summary Judgment arguing that Vega's claim for negligent infliction of emotional distress is truly one of educational malpractice, a cause of action that is not recognized in Connecticut.  Defendant's Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. No. 37-1) (hereinafter "Def's Mem. in Supp.") at 11.  Additionally, SHU argues that, even if the court finds Vega's claim to be one for negligent infliction of emotional distress, the claim fails as a matter of law.  Id.

A.      Educational Malpractice

SHU argues that, although Vega claims an action for negligent infliction of emotional distress, her true claim is one of educational malpractice.  Def's Mem. in Supp. at 11.  SHU argues that Vega cannot challenge SHU's academic decisions

---

[2] Vega also plead that SHU violated the Connecticut Unfair Trade Practices Act by failing to abide by an alleged promise contained within SHU's student handbook.  Compl. ¶ 13.  The court dismissed this claim in its Ruling on the Motion to Dismiss.  Ruling Re: Defendant's Motion to Dismiss (Doc No. 27) at 9-11.

[3] Vega asserts that she was also physically assaulted while walking on campus that day.  Pl.'s Brief in Opp. at 3.  However, in her Local Rule 56(a)(2) statement, she cites no evidence in the record to support that assertion.

because, according to Connecticut Supreme Court precedent, Connecticut does not recognize a claim of educational malpractice. Id.

This court addressed SHU's characterization of Vega's claim as one for educational malpractice in its Ruling on SHU's Motion to Dismiss and rejected that characterization.[4]  See Ruling Re: Defendant's Motion to Dismiss (Doc No. 27) (hereinafter "Motion to Dismiss") at 3.  The court adheres to its previous rejection of the educational malpractice claim with regard to SHU's Motion for Summary Judgment.[5] Vega's claim is one of negligent infliction of emotional distress.  Motion to Dismiss at 3.

### B. Negligent Infliction of Emotional Distress

SHU argues that Vega's negligent infliction of emotional distress claim fails as a matter of law.  Def's Mem. in Supp. at 17.  It argues that Vega cannot come forward with evidence upon which a reasonable jury could find the existence of a duty that was breached, nor did Vega provide evidence that satisfies the elements of negligent infliction of emotional distress.  Id. at 17-19.

---

[4] In Doe v. Yale Univ., "the court reasoned that the distinction between an educational malpractice claim and a cognizable negligence claim occurring in a[n] educational setting, 'lies in the duty alleged to have been breached.  If the duty alleged to have been breached is the duty to educate effectively, the claim is not cognizable.  If the duty alleged to have been breached is the common law duty not to cause physical injury by negligent conduct, such a claim is, of course, cognizable.'" Johnson v. Schmitz, 119 F. Supp. 2d 90, 99 (D. Conn. 2000) (citing Doe v. Yale Univ., 252 Conn. 641, 663 (2000)). In Johnson, the duty alleged to be breached was the duty to establish and enforce reasonable rules, and the court held that it was not precluded by Doe from hearing the claim.  Id.  The present case is more analogous to Johnson than Doe.

[5] The court notes, however, that Gupta's bar on educational malpractice does not apply when the result is physical harm "because it falls within the traditionally recognized duty not to cause physical harm by negligent conduct." Doe, 252 Conn. at 663.  An anxiety attack is a mental, rather than physical harm. See Bellotto v. County of Orange, 248 F. App'x 232, 237 (2d Cir. 2007); see also Martinsky v. City of Bridgeport, 814 F. Supp. 2d 130, 144 (D. Conn. 2011).  Emotional distress does not itself involve physical injury or physical harm, unless there is a physical manifestation of the emotional distress.  See Allstate Ins. Co. v. Burnard, No. 3:08CV603, 2010 WL 1332002, at * 5 (D. Conn. Mar. 31, 2010); see also Bellotto, 248 F. App'x at 237.

1. Duty

SHU argues that Vega does not allege the existence of a duty that was breached. Id. at 18. The court recognizes that "[t]he existence of a duty of care is a prerequisite to a finding of negligence." Gomes v. Commercial Union Ins. Co., 258 Conn. 603, 614 (2001). However, the court has addressed the duty element in its Motion to Dismiss. Vega has sufficient evidence for a jury to find that SHU owed her a duty of care under either the affirmative conduct doctrine or the premises liability doctrine. Vega has come forward with evidence that SHU undertook to protect her from foreseeable attacks by third parties by way of its affirmative avowals of its anti-harassment and anti-hazing policies. Pl.'s Brief in Opp. at 2-3; Vega Dep. (Doc No. 37-4) at 47-51, 66, 160. Given a duty, though, it is up to the jury to decide what SHU did to act on their duty, and whether it was reasonable.

2. Negligent Infliction of Emotional Distress

SHU argues that its response to Vega's hazing complaint was reasonable and that the school was reasonably safe for Vega. Def's Mem. in Supp. at 19. SHU supports its claim by evidencing the fact that the Sorority sisters, as well as the Sorority itself, received serious discipline, including a suspension from SHU and a no contact order effective to protect Vega. Id. at 19-20. SHU further argues that Vega cannot show that SHU's conduct was the cause of her distress. Id. at 26.

In order to prevail on a negligent infliction of emotional distress claim, the following elements must be proven: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in

illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." Carrol v. Allstate Ins. Co., 262 Conn. 433, 444, 815 A.2d 119 (2003).

The question on a motion for summary judgment is whether there is a genuine dispute as to a material fact.[6] SHU alleges that the school was reasonably safe for Vega. Def's Mem. in Supp. at 1, 20-23. Vega states in her Deposition, however, that Dean Wielk told her that she could not commute to school in order to take her classes, but that she was required to live on campus as she had to pay for her dorm and meal plan. Vega Dep. (Doc No. 37-4) at 128. Furthermore, although Dean Wielk advised Vega that it was safe to return to campus, Vega disputes that the campus was safe. Id. at 160. She was told that the Sorority sisters were all suspended from campus,[7] but on October 14, 2009, three Sorority sisters followed her on campus and, according to Vega, attempted to jump her. Id. at 158. A month later on November 16, 2009, Vega suffered an anxiety attack upon seeing a sorority sister in her dorm room. Id. at 174-76.

Vega has also presented evidence in her Deposition that the other three elements of her negligent infliction of emotional distress claim are satisfied. For example, Vega states that her distress was foreseeable because she expressed her fear of retaliation by the sisters to Dean Wielk, id. at 127, yet she did not receive any updates from administration regarding the discipline of the Sorority sisters, id. at 120.

---

[6] On a motion for summary judgment, it is plaintiff's duty to come forward with evidence showing material issues of fact. Fed. R. Civ. P. 56(a). In doing so, plaintiff is required to set forth her facts in a 56(a)(2) statement, with specific citation to the record. L.R. 56(a). Plaintiff failed in large measure to do so in this case. While summary judgment could have been granted because of this failure, the court has searched the plaintiff's deposition and identified evidence therein that creates a material issue of fact.
  Counsel is advised that failure to satisfy Local Rule 56(a) in the future will result in the grant of summary judgment.

[7] According to the parties' Local Rule 56(a) Statement, the Sorority sisters' suspension was reduced to a "non-academic" suspension on October 14, 2009. The no contact order was never removed.

Vega states that her emotional distress was severe because on November 16, 2009, she experienced an anxiety attack upon seeing one of the Sorority sisters in her dorm room, at which time 911 and campus security were called. Id. at 174-75. Lastly, Vega argues that it was SHU's conduct that caused her distress because Dean Wielk knew she feared retaliation, and yet he told her that she was safe on SHU's campus. Id. at 160.

## V. CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment [**Doc. No. 37**] is **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 10th day of April, 2012.

                                                   /s/ Janet C. Hall
                                                   Janet C. Hall
                                                   United States District Judge